United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Eddy Jean Philippeaux, Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 22-23938-Civ-Scola |
| ) | |
| United States of America, ) | |
| Defendant. ) | |

### Order

This matter is before the Court on Defendant United States of America's (the "United States" or the "Government") motion to dismiss the second amended complaint (Mot. to Dismiss, ECF No. 66), Plaintiff Eddy Jean Philippeaux's motion for declaratory judgment (Mot. for Decl. J., ECF No. 68),[1] and the Plaintiff's motion to change venue (ECF No. 72.) The Plaintiff has responded in opposition to the Government's motion. (Resp. to Mot. to Dismiss, ECF No. 67.)[2] The Government has timely replied and, in doing so, responded to the Plaintiff's motion for declaratory judgment. (Reply in Supp. of Mot. to Dismiss, ECF No. 69.) After careful consideration of the briefing, the record, and the relevant legal authorities, the Court **grants** the Government's motion to dismiss. (**ECF No. 66**.) Accordingly, the Court also **denies** the Plaintiff's motion for a declaratory judgment (**ECF No. 68**) and motion to change venue (**ECF No. 72**.)

### 1. Background

This case was recently reassigned to this Court, after extensive prior litigation over the Plaintiff's pro se claims relating to his allegations of misdiagnosis and mistreatment of injuries he suffered while serving with the United States Navy, beginning in 1977. The Plaintiff first filed suit in the Southern District in late 2018. (ECF No. 1.) Shortly thereafter, the Plaintiff amended his complaint. (ECF No. 22.) The Government moved to dismiss the first amended complaint, arguing it was a shotgun pleading. (ECF No. 25.) The Court granted the motion, finding the first amended complaint to be a shotgun pleading, but allowed the Plaintiff to file a second amended complaint. (ECF No.

---

[1] The Plaintiff's arguments in support of his motion for a declaratory judgment are contained in his response to the Government's motion to dismiss (ECF No. 67), but the motion itself is docketed at docket entry number 68.

[2] The Plaintiff has also submitted a document titled a "Supplementary Memorandum of Law in Support of his Motion for Declaratory Judgment," (Suppl., ECF No. 70), that presents arguments in opposition to the Government's motion to dismiss. Although these additional arguments are untimely, the Court nonetheless considers (and rejects) them in light of the Plaintiff's pro se status.

63.) The Plaintiff filed his second amended complaint, which is now the subject of the current motions, on August 15, 2022. (Sec. Am. Compl., ECF No. 64.)

The Plaintiff now brings claims against the United States under five separate counts in the second amended complaint, each relating to his service with the armed forces in the Navy, the United States Air Force, and the Air National Guard, to his later treatment with the Department of Veterans Affairs (the "VA"), or at times to both. (*Id.*) In Count I, the Plaintiff asserts a claim for negligence, based on medical malpractice, against the United States for his treatment by military doctors and other personnel after his 1977 incident. (*Id.* ¶¶ 31-68.) In Count II, the Plaintiff asserts a claim against the United States for the VA's treatment relating to the same underlying injury. (*Id.* ¶¶ 69-92.) In Count III, the Plaintiff asserts a claim for retaliation against the United States under the Federal Tort Claims Act (FTCA, 28 U.S.C. §§ 2671 *et seq.*). (Sec. Am. Compl. ¶¶ 93-94.) In Count IV, he brings a claim for intentional infliction of emotional distress against the United States, also under the FTCA. (*Id.* ¶¶ 95-98.) Finally, in Count V, the Plaintiff asserts a claim of discrimination against the United States. (*Id.* ¶¶ 99-112.)

Mr. Philippeaux's claims center around an injury he sustained in 1977 while on active duty with the Navy. The Plaintiff alleges that on October 12, 1977, while serving on the *USS McCandless* (a Navy frigate, designation FF-1084) he "fell on a sharp metal hatch" and, as a result, "suffered a closed head injury or a severe traumatic brain injury (TBI)." (*Id.* ¶¶ 2, 32.) Mr. Philippeaux claims that he lost consciousness, fell, suffered cuts to his face and, after regaining consciousness, "reported to the ship clinic (sick bay) for treatment." (*Id.* ¶ 35.) There, he was treated by a Navy doctor and corpsman, who treated his cuts but otherwise returned him to duty, without performing any diagnostic examinations relating to his loss of consciousness. (*Id.* ¶¶ 33-38.)

Thereafter, the Plaintiff claims, the Navy continued to misdiagnose and improperly treat his head injuries due to failures to conduct what he characterizes as "required diagnostic examinations" relating to his fall and loss of consciousness. (*Id.* ¶¶ 39-68.) Mr. Philippeaux also served in the United States Air Force from 1984 through 1985, and the Air National Guard from 1985 through 1989. (*Id.* ¶¶ 21-22.) He similarly alleges that the Air Force and the Air National Guard failed to appropriately diagnose and treat his injuries stemming from the 1977 accident. (*Id.* ¶¶ 24.)

Finally, the Plaintiff alleges that the VA, like the Navy and the Air Force, failed to properly treat his injuries. Beginning in 1995, the Plaintiff sought treatment at VA hospitals for his continuing symptoms, including psychiatric disorders. (*Id.* ¶ 69-70.) Once again, he alleges, the VA failed to conduct the "proper diagnostic examinations" of his head injury. (*Id.*) After an extensive period of treatment and evaluation, in 2010, the VA issued a decision finding that the

Plaintiff's ongoing symptoms were not related to his 1977 accident aboard the *McCandless*. (*Id.* ¶ 78.) The Plaintiff alleges, however, that the doctor issuing that opinion—Dr. Hiesiger—changed his original opinion based on the report of a clinical psychologist, Dr. Nedeliski, who had also treated Mr. Philippeaux. (*Id.* ¶¶ 74-78.) While Dr. Hiesiger had initially found Mr. Philippeaux's symptoms to be related to the 1977 accident, Dr. Nedeliski did not. (*Id.*) The Plaintiff alleges that upon receiving Dr. Nedeliski's report, Dr. Hiesiger "amend[ed]" his original report to "reconcile" it with Dr. Neleski's, resulting in the Plaintiff being denied continuing VA treatment. (*Id.*) The Plaintiff alleges that this was done for purely "discriminatory reasons." (*Id.* ¶ 79.)

Based on this history of alleged mistreatment, the Plaintiff claims that he has suffered from many psychiatric and other disorders, lost well-paying jobs, and continues to incur medical expenses. (*Id.* ¶¶ 80-92.) Through the multiple counts the Plaintiff alleges, he seeks general and economic damages (totaling a claimed $45 million), an injunction requiring the VA to provide him "overdue medical care" relating to the 1977 accident, and an award of attorneys' fees and costs. (*Id.* at 26.)

The Government moves to dismiss the second amended complaint based on five separate arguments. First, the Government argues, the Plaintiff is collaterally estopped from bringing the claims he raises in Counts II, III, and IV because of those same claims were dismissed for lack of subject matter jurisdiction by the Southern District of New York in 2010. (Mot. to Dismiss at 5-7.) Second, the Government asserts that the Court lacks jurisdiction to enjoin the VA to make a specific reversal of a VA benefits decision. (*Id.* at 7-9.) Third, the Government states that the Plaintiff's negligence claim in Count I is barred by the *Feres* doctrine. (*Id.* at 9-10.) Fourth, the Government argues that the Court lacks subject matter jurisdiction over Counts III and V because the Plaintiff fails to identify common-law analogs to his retaliation and discrimination claims under Florida law. (*Id.* at 10-12.) Fifth, and finally, the Government argues that any of the Plaintiff's claims that survive the various jurisdictional and legal arguments already presented are barred by the FTCA's statute of limitations. (*Id.* at 12-14.)

In response, the Plaintiff addresses only the Government's third, fourth, and fifth arguments. Mr. Philippeaux argues that the statute of limitations does not apply because the torts he alleges are subject to the continuing tort doctrine. (Resp. at 2-4). Next, he argues that his claim relating to his active-duty status falls within an exception to the *Feres* doctrine. (*Id.* at 8-11.) Finally, the Plaintiff asserts that certain New York and California statutes provide retaliation and discrimination remedies that support his FTCA claims. (*Id.* at 16-17.) The Plaintiff does not respond to any of the Government's jurisdictional arguments. (*See generally id.*)

### 2. Legal Standard

Attacks on subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) come in two forms: "facial attacks" and "factual attacks." *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990). Facial challenges to subject matter jurisdiction are based solely on the allegations in the complaint. *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). Thus, the court will "look at the face of the complaint and determine whether the plaintiff has alleged a sufficient basis for subject matter jurisdiction." *Scelta v. Delicatessen Support Servs., Inc.*, No. 98–2578–CIV–T–17B, 1999 WL 1053121, at *4 (M.D. Fla. Oct. 7, 1999) (cleaned up). Factual attacks, on the other hand, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings," and the court may consider "matters outside the pleadings, such as testimony and affidavits." *Lawrence*, 919 F.2d at 1529 (internal quotation marks omitted). Further, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997); *see Lawrence*, 919 F.2d at 1529.

A court considering a motion to dismiss, filed under Federal Rule of Civil Procedure 12(b)(6), must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal punctuation omitted) (quoting Fed. R. Civ. P. 8(a)(2)). A court must dismiss a plaintiff's claims if she fails to nudge her "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. Regardless of a plaintiff's allegations, "the court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

### 3. Analysis

The Court begins, by necessity, with the various jurisdictional arguments. First, the Court finds that it lacks subject matter jurisdiction over the Plaintiff's

retaliation and discrimination claims because the Plaintiff cannot identify any state common-law analog claims to support those counts. Second, the Court finds that the Plaintiff is collaterally estopped from bringing his negligence and intentional infliction of emotional distress claims, based on the Southern District of New York's dismissal of those claims for lack of subject matter jurisdiction.[3] Third, the Court finds that it lacks jurisdiction to enter injunctive relief directing the VA to make a specific benefits determination. Fourth, in addressing the substantive issues, the Court finds that the Plaintiff's claim for negligence based on his active-duty medical treatment is barred by the *Feres* doctrine. Fifth, and finally, the Court also finds that the FTCA's statute of limitations would additionally serve to bar each of the Plaintiff's claims, were they not otherwise due to be dismissed. The Court addresses each issue in detail, and in turn, below.

### A. The Court Lacks Subject Matter Jurisdiction Over the Plaintiff's Counts for Retaliation and Discrimination in Counts III and V

The Court lacks jurisdiction to hear the Plaintiff's claims for retaliation and discrimination in Counts III and V because those claims lack state common-law analogs and, therefore, the United States has not waived its sovereign immunity under the FTCA. The Eleventh Circuit has stated that "a state tort cause of action is a *sine qua non* of FTCA jurisdiction, and we have dismissed FTCA suits that have pleaded breaches of federal duties without identifying a valid state tort cause of action." *Zelaya v. United States*, 781 F.3d 1315, 1324 (11th Cir. 2015). The Plaintiff must identify the state-tort cause of action which his FTCA claims are based. *Id.*

Here, the Plaintiff titles his claims as claims for "retaliation" and "discrimination." (Sec. Am. Compl. ¶¶ 93-94, 99-112.) Although the Plaintiff does not plead that a specific state law governs this case, he does identify that he is a resident of Florida, and that the wrongful acts that he alleges to have occurred happened in New York, California, and Maryland. (Sec. Am. Compl. ¶ 11.) In his response, the Plaintiff does not attempt to identify any state-law tort claims that would serve as the basis for his claims under Florida or Maryland law. (Resp. at 15-17.) Accordingly, the Court need not consider those states, and at any rate is unaware of a sufficient analog tort under either state's law. *See, e.g., Munoz v. United States*, 737 F. App'x 442, 445 (11th Cir. 2018) (affirming district court's dismissal of FTCA claim where plaintiff did not identify state-law tort analog in briefing to the district court). The Plaintiff does, however, point to New York and California statutes that he contends support his retaliation and discrimination

---

[3] The Court observes that, if it were to have found it had subject matter jurisdiction over the retaliation claim, that claim would also be collaterally estopped based on the Southern District of New York's decision.

claims: New York Public Health Law § 81.8 and California Health and Safety Code § 1278.5. (*Id.*)

Nevertheless, even if New York or California law were the appropriate law to apply here, neither statute can provide the necessary analog for the Plaintiff's retaliation and discrimination claims. As the Government observes, neither statute creates a cause of action in tort. N.Y. Pub. Health Law § 81.8; Cal. Health & Safety Code § 1278.5. Further, the New York statute applies to "residential health care facilit[ies]," which New York law defines as nursing homes. N.Y. Pub. Health Law §§ 81.8(a), 2801(3). And the California code does not apply to individual doctors, as the Plaintiff bases his claim on here. *Armin v. Riverside Cmty. Hosp.*, 5 Cal. App. 5th 810, 832 (Cal. Ct. App. 2016), *as modified* (Dec. 15, 2016) ("We conclude section 1278.5 does *not* allow individual doctors to be sued."). Finally, even if the California law were to provide a relevant supporting cause of action sounding in tort, the Court cannot identify any relevant supporting allegations that are claimed to have occurred in California—rather, as best the Court can determine, the Plaintiff's retaliation and discrimination claims appear to be based on treatment received at a VA hospital in Maryland. (Sec. Am. Compl. ¶¶ 11, 93-94, 99-112.)

Therefore, the Court finds that the United States has not waived sovereign immunity under the FTCA with regards to the Plaintiff's retaliation and discrimination claims. Accordingly, the Court lacks subject matter jurisdiction to hear those claims and must dismiss them.

### B. The Plaintiff Is Collaterally Estopped from Asserting His Claims for Negligence and Intentional Infliction of Emotional Distress in Counts II, III, and IV

The Court also lacks jurisdiction to hear the Plaintiff's counts for negligence in Count II, retaliation in Count III, and intentional infliction of emotional distress in Count IV because those claims have previously been dismissed for a lack of subject matter jurisdiction by the Southern District of New York.[4] In 2010, after the VA denied the Plaintiff benefits, the Plaintiff sued the Government in New York for negligence (based on medical malpractice), retaliation, and infliction of emotional distress (among other claims). *Philippeaux v. United States*, No. 10 CIV. 6143 NRB, 2011 WL 4472064, at *1 (S.D.N.Y. Sept. 27, 2011) ("*Philippeaux I*"). As in his second amended complaint here, the Plaintiff there based his claims for relief on the VA's 2010 denial of benefits. *Id.* In *Philippeaux I*, the Southern District of New York determined that it could not hear the Plaintiff's malpractice,

---

[4] The Plaintiff does not address this argument at all in his response to the Government's motion to dismiss. Nonetheless, the Court reviewed and considered this argument thoroughly based on the Plaintiff's pro se status.

retaliation, and infliction of emotional distress claims because the Plaintiff effectively brought benefits denial claims retouched as tort claims, and district courts may not review VA benefits decisions (which the Court also addresses further, below). *Id.* at * 6-9. That court also found that the Plaintiff's claims for medical malpractice and retaliation were not cognizable, as pleaded, under the FTCA because they fell within exceptions to the United States' waiver of immunity. *Id.* at *6-7.

The Southern District of New York's decision in *Philippeaux I* applies here under the doctrine of collateral estoppel. Because the Southern District of New York has determined that it lacks subject matter jurisdiction over the Plaintiff's claims for negligence (medical malpractice by VA officials), retaliation, and intentional infliction of emotional distress, and because those claims were essentially identical to the claims the Plaintiff raises here, this Court similarly lacks jurisdiction. *N. Georgia Elec. Membership Corp. v. City of Calhoun, Ga.*, 989 F.2d 429, 433 (11th Cir. 1993). There, the Eleventh Circuit observed:

> Although the dismissal of a complaint for lack of jurisdiction does not adjudicate the merits so as to make the case res judicata on the substance of the asserted claim, it does adjudicate the court's jurisdiction, and a second complaint cannot command a second consideration of the same jurisdictional claims.

*Id.* (quoting *Boone v. Kurtz*, 617 F.2d 435, 436 (5th Cir. 1980). The Plaintiff cannot now relitigate the issue of subject matter jurisdiction over Counts II, III, and IV of his second amended complaint, and it is notable that he does not address this argument at all in his response. Accordingly, the Court must dismiss these counts for lack of subject matter jurisdiction.

### C. The Court Lacks Jurisdiction to Enter Injunctive Relief against the Government on the Plaintiff's Claims

The Court also lacks subject matter jurisdiction to resolve the Plaintiff's requested injunction directing the VA to provide him specific medical treatment. (*Id.* at 26.)  District courts lack the authority to decide claims seeking review of veterans' benefit determinations under the Veterans; Judicial Review Act ("VJRA"). *Smith v. United States*, 7 F.4th 963, 895-86 (11th Cir. 2021) (citing 38 U.S.C. § 511(a) and holding that, based on the statute's plain text, district courts may not review the "approval or authorization of a particular treatment" because that constitutes a "quintessential benefits determination[]."). The Court therefore

cannot grant the relief the Plaintiff requests in the second amended complaint and must also deny his motion for declaratory relief accordingly.[5]

### D. The Plaintiff's Negligence Claim in Count I is Precluded by the *Feres* Doctrine

Next, the Court finds that the Plaintiff's sole remaining claim—Count I, negligence (medical malpractice) based on his treatment by Navy medical personnel after his 1977 incident—is precluded by the *Feres* doctrine. Because the Plaintiff was an active-duty member of the military at the time of the incident, and not on leave, furlough, or similar release from active duty, he is prevented from bringing tort claims against the United States relating to his military service. *Feres v. United States*, 340 U.S. 135, 146 (1950) ("We conclude that the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service.").

In *Feres*, the Supreme Court determined that the FTCA does not allow active-duty servicemembers to sue the United States in tort for "service-connected injuries." *Id.* at 142. The Supreme Court based this outcome on two key points: first, the FTCA does not create new claims for relief against the United States, but instead allows the United States to be sued under "the law of the place [that is, the state] where the act or omission occurred"; and second, no state (or federal) law in American jurisprudence ever allowed a military (or militia) servicemember to recover damages for harms suffered incident to military service. *Id.* at 141-42. Put more simply, the FTCA codified American law as it stood at the time (and does now)—no substantive law allows servicemembers to recover against the Government for harms suffered incident to military service. *Id.* This doctrine applies in full force still today, and the underlying landscape of supporting substantive law has not changed. *See McMahon v. Presidential Airways, Inc.*, 502 F.3d 1331, 1343 (11th Cir. 2007) ("*Feres* operates to bar all service-related tort claims brought by soldiers against the government.").

The Plaintiff argues vigorously in his response that he falls within the exception to the *Feres* doctrine announced by the Supreme Court in *Brooks v. United States*. (Resp. at 8-11); 337 U.S. 49, 51 (1949). But *Brooks* stands for the proposition that servicemembers, like any other citizen, may sue the United States under the FTCA for tort-based harms suffered that are **not** incident to

---

[5] The Plaintiff also fails to address this issue in his response. Further, the Court observes that this is the same reason the Southern District of New York dismissed the Plaintiff's claims for medical malpractice, retaliation, and intentional infliction of emotional distress for lack of subject matter jurisdiction: that court found that these claims were merely the Plaintiff's attempts to restate his VA benefits denial claim as tort claims, which is not permissible under the VJRA. *Philippeaux I*, 2011 WL 4472064, at *6-9.

military service. 337 U.S. at 51-52.[6] And the Plaintiff's negligence claim in Count I is **clearly** incident to his service with the Navy: he pleads that the *McCandless*'s "doctor and corpsman" and the "Naval Hospital in Philadelphia" both "failed to perform" the "required diagnostic examinations" following his October 12, 1977, injury while at sea on the *McCandless*. (Sec. Am. Compl. ¶¶ 32-42.) The Plaintiff's claim in Count I is for injuries sustained on active duty and the alleged failures of military medical personnel to adequately treat those injuries. That claim is barred by *Feres*. Accordingly, the Court must dismiss Count I.

### E. Any Claims the Court Has Jurisdiction to Address Are Barred by the Statute of Limitations

Finally, were the Court to have jurisdiction over any of the Plaintiff's claims in Counts II-V, and were Count I not barred by the *Feres* doctrine, each of those claims would be barred by the FTCA's statute of limitations.[7] As the Government observes, the FTCA has two statutes of limitations: (1) "[a] tort claim . . . shall be . . . presented in writing to the appropriate Federal agency within two years after such claim accrues;" and (2) the complaint must be filed with the federal court "within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b). The Plaintiff's second amended complaint runs afoul of both.

The Plaintiff pleads that the operative injuries he allegedly suffered occurred between 1977 and 2010. (Sec. Am. Compl. ¶¶ 31-94.) The most recent date he points to in the second amended complaint is April 14, 2010, when Dr. Nedeliski allegedly wrote a report for the VA finding that the Plaintiff did not suffer from TBI due to his 1977 accident. (*Id.* ¶ 76.) Accordingly, the Plaintiff was required to present his claim to the VA no later than April 14, 2012, and would have been required to present his claims in federal court no later than six months after the VA denied his claim. 28 U.S.C. § 2401(b). By his own allegations, the Plaintiff did neither.

---

[6] *Feres* was decided immediately after, but in the same context as *Brooks*, and actually outlines an exception to *Brooks'* general rule: military members, like anyone else, may sue the United States in tort under the FTCA for damages caused by the United States or its employees. But, if the servicemember's harms were suffered while on active duty, then the servicemember is barred from recovering under the FTCA because there is no tort or tort analog that would allow an individual in that specific situation to recover damages under any state's substantive law. *Compare Brooks*, 339 U.S. at 52 ("Were the accident incident to the Brooks' service, a wholly different case would be presented.") *with Feres*, 340 U.S. at 141 ("This is the 'wholly different case' reserved from our decision in Brooks.").

[7] The Court addresses this issue last, and in the alternative, because the FTCA's statute of limitations is not jurisdictional. Rather, it is a "run-of-the-mill statute of limitations," and therefore is appropriately addressed under Rule 12(b)(6), as a legal bar to the Plaintiff's ability to state a claim upon which relief may be granted. *United States v. Wong*, 575 U.S. 402, 411 (2015).

Rather, the Plaintiff alleges that he submitted his claim to the VA on May 10, 2018—over six years after the FTCA's deadline. (Sec. Am. Compl. ¶ 7.) The VA denied his (untimely) claim on May 29, 2018. (*Id.* ¶ 8.) But the Plaintiff did not file this suit until December 13, 2018—more than six months after the VA denied his claim. (Compl., ECF No. 1.) The claims the Plaintiff brings in his second amended complaint would therefore be barred by both of the FTCA's statute of limitations, and as such, the Plaintiff fails to state a claim upon which relief can be granted under the FTCA. *Phillips v. United States*, 260 F.3d 1316, 1319 (11th Cir. 2001) (affirming district court's dismissal of the plaintiff's claims under the FTCA for failure to comply with the FTCA's six-month post-administrative denial statute of limitations).

Finally, the Plaintiff claims in his response Resp. at 12-15) and his supplement (Suppl. at 2-4) that his claims are timely because they are subject to the continuing tort doctrine, as he has continued to suffer harms related to his claims through December 21, 2021.[8] The Plaintiff's arguments are insufficient for two reasons. First, the Plaintiff fails to plead any continuing violations or harms in his complaint—the most recent date he references in the second amended complaint is the April 14, 2010, date of Dr. Nedeliski's report. (Sec. Am. Compl. ¶ 76.) Second, the Eleventh Circuit has not adopted the continuing torts doctrine, and the Court declines to apply it here, where the pleadings make clear that the Plaintiff was well aware of the VA's decision to deny benefits over ten years ago. *McCullough v. United States*, 607 F.3d 1355, 161-62 (11th Cir. 2010). Accordingly, were the Court to have jurisdiction to hear any of the Plaintiff's claims, it would also find that those claims are barred by the FTCA's statute of limitations.

### 4. Conclusion

For the reasons stated above, the Court **grants** the Government's motion to dismiss. (**ECF No. 66**.) The Plaintiff's second amended complaint is therefore **dismissed**. Accordingly, the Court also **denies** the Plaintiff's motion for declaratory judgment (**ECF No. 68**) and motion to change venue (**ECF No. 72**.) The Clerk is directed to **close** this case. Any pending motions are **denied as moot**.

**Done and ordered** in Miami, Florida, on February 27, 2023.

_____
Robert N. Scola, Jr.
United States District Judge

---

[8] The Defendant also states that the FTCA's statute of limitations on his claims should be equitably tolled, but he presents no arguments in support of that contention. (Resp. at 15-16.) Therefore, the Court will not address it.